TODD KIM, Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
MARK ARTHUR BROWN
D.C. Bar No. 470050
Wildlife and Marine Resources Section
4 Constitution Square
150 M Street, N.E.
Washington, D.C. 20002
Tel: 202-305-0204
mark.brown@usdoj.gov

*Attorneys for Defendants*

*[Additional counsel listed at end]*

## UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST ENVIRONMENTAL DEFENSE CENTER; CENTER FOR BIOLOGICAL DIVERSITY; THE CONSERVATION ANGLER; and WILLAMETTE RIVERKEEPER,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**FEDERAL EMERGENCY MANAGEMENT AGENCY; DEANNE CRISWELL, in her official capacity as Administrator of the Federal Emergency Management Agency; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the U.S. Department of Homeland Security,**<br><br>**Defendants.** | **Case No. 3:23-cv-01335-SI** |

## DEFENDANTS' REPLY MEMORANDUM
## IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

**PAGE**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.   Plaintiffs' Claims Concerning Implementation of the NMFS-Recommended RPA Are Unripe. ................................................................................................... 3

II.  FEMA's RPA Pre-Implementation Compliance Measures Ensure Against Jeopardy and Destruction or Adverse Modification of Habitat Under ESA Section 7 (First Claim for Relief). ....................................................................... 6

III. FEMA's Draft Integration Plan Is Not A Final, Reviewable Agency Action. ................. 14

IV. FEMA Has Not Unreasonably Delayed Compliance with its ESA Section 7 Obligations (Second Claim for Relief). ............................................................... 16

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Alaska Dep't of Env't Conservation v. EPA*,
   540 U.S. 461 (2004) ........................................................................................................ 15

*Angeles v. U.S. Airways, Inc.*,
   No. C 12-05860 CRB, 2013 WL 622032 (N.D. Cal. Feb. 19, 2013) ...................................... 16

*In Re Natural Resources Defense Council, Inc.*,
   956 F.3d 1134 (9th Cir. 2020) ...................................................................................... 16, 17

*Nat. Res. Def. Council v. EPA*,
   859 F.2d 156 (D.C. Cir. 1988) ........................................................................................... 4

*Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs*,
   479 F. Supp. 3d 1003 (D. Or. 2020) ............................................................................... 3, 13

*Ohio Forestry Association v. Sierra Club*,
   523 U.S. 726 (1998) .......................................................................................................... 4

*Oregonians for Floodplain Prot. v. U.S. Dep't of Com.*,
   334 F. Supp. 3d 66 (D.D.C. 2018) ..................................................................................... 5

*Ramirez v. Ghilotti Bros.*,
   941 F. Supp. 2d 1197 (N.D. Cal. 2013) ............................................................................ 16

*Rintoul v. Old Dominion Freight Line, Inc.*,
   Case No. 3:21-cv-1733-JR, 2024 WL 2974469 (D. Or. June 13, 2024) ................................ 16

*Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*,
   143 F.3d 515 (9th Cir. 1998) ............................................................................................. 6

*Telecommunications Research & Action Center v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) ........................................................................................... 16

*Tribal Vill. of Akutan v. Hodel*,
   869 F.2d 1185 (9th Cir. 1988) .................................................................................... passim

**Statutes**

5 U.S.C. § 706(1) ......................................................................................................... 1, 16

16 U.S.C. § 1536(a)(2) ..................................................................................................... 1

42 U.S.C. § 4102(c) ....................................................................................................... 12

**Other Authorities**

Pub. L. No. 115-254, 132 Stat. 3186 (2018)........................................................................ 4

# GLOSSARY

| | |
|---|---|
| **APA** | Administrative Procedure Act |
| **BiOp** | Biological Opinion |
| **CLOMR** | Conditional Letter of Map Revision |
| **CLOMR-F** | Conditional Letter of Map Revision Based on Fill |
| **Corps** | U.S. Army Corps of Engineers |
| **DRRA** | Disaster Recovery Reform Act of 2018 |
| **ESA** | Endangered Species Act |
| **FEMA** | Federal Emergency Management Agency |
| **NEPA** | National Environmental Policy Act |
| **NFIP** | National Flood Insurance Program |
| **NMFS** | National Marine Fisheries Service |
| **PICMs** | pre-implementation compliance measures |
| **RBZ** | riparian buffer zone |
| **RPA** | reasonable and prudent alternative |
| **SFHA** | special flood hazard area |
| **TRAC** | Telecommunications Research & Action Center |

## INTRODUCTION

Plaintiffs' Complaint includes two claims for relief against Defendant Federal Emergency Management Agency ("FEMA") concerning FEMA's implementation of the National Flood Insurance Program ("NFIP") in Oregon. Plaintiffs' First Claim for Relief alleges that FEMA is failing to ensure against jeopardy and destruction or adverse modification of habitat under Section 7 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2). ECF No. 1 (Complaint) ¶¶ 98-105. Plaintiffs' claim relies solely on FEMA's alleged failure to "complete its implementation" of the reasonable and prudent alternative ("RPA") recommended by the National Marine Fisheries Service ("NMFS") in its 2016 biological opinion ("BiOp"). *Id.* ¶ 103. Plaintiffs also assert a second claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), that FEMA has unlawfully delayed or unreasonably withheld taking action pursuant to the NMFS-recommended RPA to ensure its compliance with ESA Section 7. Complaint ¶¶ 106-114.

As explained in Defendants' memorandum in support of their motion for summary judgment, ECF No. 21-1 at 12, Congress extended the deadline for FEMA to complete its implementation of the RPA until September 1, 2027. Plaintiffs' claims concerning FEMA's alleged failure to complete "full implementation" are clearly unripe. In the meantime, as of July 15, 2024, FEMA has adopted pre-implementation compliance measures ("PICMs") in accordance with RPA Element 2, which NMFS recommended to avoid jeopardy to 16 ESA-listed anadromous fish species and Southern Resident killer whales, and adverse modification of designated critical habitat pending FEMA's full implementation of the other NMFS-recommended RPA elements. FEMA has also announced a draft Oregon Implementation Plan for NFIP ESA Integration ("Integration Plan") to fully address the other NMFS-recommended

RPA elements ahead of the September 1, 2027, deadline for full implementation. FEMA is preparing an Environmental Impact Statement concerning the draft Integration Plan to satisfy its obligations pursuant to the National Environmental Policy Act ("NEPA").

In response, Plaintiffs now refashion the allegations in their Complaint in an attempt to retain some viable kernel of their original claims. With respect to their First Claim for Relief, Plaintiffs do not dispute that Congress extended the deadline for full implementation of the RPA and that the deadline has not yet passed. ECF No. 29 at 6. Rather than continuing to challenge FEMA's alleged failure to achieve "full implementation" of the NMFS-recommended RPA, Plaintiffs now suggest that FEMA has engaged in a "pattern of delay" ahead of the acknowledged, Congressionally extended deadline for "full implementation." *Id.* at 8. Faced with Defendants' arguments in accordance with Circuit precedent that any alleged delay by FEMA in implementing the RPA has been reasonable, *see* ECF No. 21-1 at 54-57, Plaintiffs backpedal on their original statements. Plaintiffs now state that they "seek summary judgment only on their First Claim for Relief," ECF No. 29 at 6 n.1, essentially conceding Defendants' arguments.

Plaintiffs cannot have it both ways. They cannot abandon their Second Claim for Relief alleging that FEMA has unreasonably delayed implementation of the RPA and then, repeatedly, bemoan FEMA's alleged delay as support for the remaining ESA arguments in their First Claim for Relief. *See, e.g., id.* at 6 (referencing FEMA's "long history of delay" and "the slough of missed RPA deadlines to date"); *id.* at 8 ("FEMA's pattern of delay warrants judicial intervention"); *id.* at 9 ("FEMA should not be allowed to capitalize on its delay."); *id.* at 10 ("FEMA's Delay is Jeopardizing Listed Species and is Destroying and Adversely Modifying Their Critical Habitat"); *id.* at 14 n.6 (referencing "FEMA's delay"); *id.* at 27 n.13 ("FEMA cannot use its failure to follow NEPA's procedural requirements as an excuse to continue to

delay coming into compliance with Section 7's substantive duties."); *cf. id.* at 8 ("FEMA has procrastinated at every turn.").

Plaintiffs' current claims hardly resemble those asserted in their Complaint and, in any event, lack merit. Plaintiffs' claims premised on an alleged failure to act must now be reviewed in relation to the administrative record and evidence of FEMA's decision to implement the PICMs. There is no ESA violation because the record before the Court confirms that FEMA has taken adequate steps to comply with the ESA considering NMFS's recommendations in the RPA. *Tribal Vill. of Akutan v. Hodel*, 869 F.2d 1185, 1194 (9th Cir. 1988). The Court should grant summary judgment in favor of Federal Defendants with respect to Plaintiffs' First Claim for Relief. The Court should also grant summary judgment in favor of Federal Defendants with respect to Plaintiffs' now abandoned Second Claim for Relief.

## ARGUMENT

### I.    Plaintiffs' Claims Concerning Implementation of the NMFS-Recommended RPA Are Unripe.

Plaintiffs concede that their First Claim for Relief is unripe by acknowledging that the deadline for "full implementation" of the RPA has not yet passed. *See* ECF No. 29 at 6. Plaintiffs further acknowledge that only some of the RPA's interim deadlines have passed. *See id.* ("FEMA has failed to meet most of the deadlines for RPA implementation."). To the extent Plaintiffs assert that there is some present ESA violation because of any alleged delay in implementing the RPA, *see* ECF No. 30 at 9, FEMA has shown that it is taking "alternative, reasonably adequate steps" to comply with the ESA. *See infra* at 13-14 (distinguishing *Nw. Env't Def. Ctr. ("NEDC") v. U.S. Army Corps of Eng'rs*, 479 F. Supp. 3d 1003 (D. Or. 2020)).

Defendants disagree with Plaintiffs' proposed interpretation of the Disaster Recovery Reform Act of 2018 ("DRRA"). Plaintiffs' proposal would subject FEMA to multiple, rolling

RPA implementation deadlines rather than a single deadline for full RPA implementation. Congress itself is monitoring FEMA's implementation of the RPA pursuant to the new deadline. In addition to extending the implementation deadlines, Congress directed FEMA to submit a report on the status of RPA implementation within 18 months from the date of enactment of the DRRA. *See* Pub. L. No. 115-254, § 1246, 132 Stat. 3186, 3469 (2018). In accordance with the DRRA, FEMA provided an "Update to Congress on the [NFIP] Implementation of the [NMFS] Biological Opinion [RPA] in Oregon" on April 30, 2020. AR 0005057.

Although Federal Defendants disagree with Plaintiffs' proposed interpretation of the RPA and DRRA, it is unnecessary to reach the issues of whether any interim RPA deadlines have lapsed. Plaintiffs' first claim is unripe based on the factors set forth in *Ohio Forestry Association v. Sierra Club:*

> (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented.

523 U.S. 726, 733 (1998). As to the first factor, Plaintiffs fail to show that deferring judicial review would have any immediate effect on Plaintiffs. *Nat. Res. Def. Council v. EPA*, 859 F.2d 156, 166 (D.C. Cir. 1988) (per curiam). Even assuming *arguendo* Plaintiffs are correct in asserting that many of the species discussed in the NMFS BiOp face a "high risk of extinction," *see* ECF No. 29 at 7, Plaintiffs do not say which interim RPA deadlines have passed and which (if any) ongoing FEMA actions still harm them now that FEMA is implementing the PICMs in accordance with RPA Element 2. *See id.* There is no specific action that Plaintiffs are currently asking for FEMA to do or stop doing with respect to any particular threatened or endangered species.

Regarding the second factor, judicial intervention at this time may interfere with ongoing administrative action, namely FEMA's work toward completing the NEPA process. As discussed in the memorandum submitted by *Amici*, "the Court should not order FEMA to implement the Biological Opinion's RPA, or alternative measures, until after the NEPA process is completed and FEMA issues a [Record of Decision]." ECF No. 28 at 11.

Regarding the third factor, the Court would benefit from further factual development. Plaintiffs themselves assert that the Model Ordinance that forms the basis of one of the ESA compliance pathways established by FEMA is "still taking shape," ECF No. 29 at 13. Indeed, both the Model Ordinance and Habitat Assessment Guide have been revised multiple times and may be subject to further revisions as the PICMs are implemented. To the extent that Plaintiffs challenge the sufficiency of the Model Ordinance or other specific provisions of the PICMs, delaying review (at least) until the deadline established by Congress for full RPA implementation would allow FEMA to develop an administrative record of community implementation. Such a record would obviate the need for Plaintiffs to speculate about what the communities will do in response to the PICMs.

Several years have passed since the U.S. District Court for the District of Columbia dismissed the previous challenge concerning FEMA's actions pursuant to the 2016 BiOp as unripe. *See Oregonians for Floodplain Prot. v. U.S. Dep't of Com.*, 334 F. Supp. 3d 66, 74 (D.D.C. 2018). As described above, since 2018, FEMA has developed a draft Integration Plan, commenced NEPA review on the draft Integration Plan, and is currently implementing the PICMs. Still, however, these claims concerning FEMA's actions to implement the RPA remain unripe based on the same factors analyzed in that decision. *Id.* at 74 ("[P]laintiffs have not

alleged to date any ongoing, concrete injury arising from FEMA's implementation of the

RPA."). The Court should dismiss Plaintiffs' claims as unripe.

## II.    FEMA's RPA Pre-Implementation Compliance Measures Ensure Against Jeopardy and Destruction or Adverse Modification of Habitat Under ESA Section 7 (First Claim for Relief).

FEMA is not obligated to implement the NMFS-recommended RPA in the manner that

Plaintiffs might prefer or even that NMFS may prefer. *See* ECF No. 21-1 at 21-23; *Sw. Ctr. for*

*Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 523 (9th Cir. 1998) ("The

Secretary was not even required to pick the best alternative or the one that would most

effectively protect the [listed species] from jeopardy."). Assuming *arguendo* that there is any

vestige of Plaintiffs' original claims that could be considered ripe, then the issue before the Court

is whether FEMA has taken "alternative, reasonably adequate steps" to comply with the ESA in

light of NMFS's recommendations with respect to RPA Element 2. *Tribal Vill. of Akutan*, 869

F.2d 1193. The record before the Court confirms that FEMA is complying with the ESA in this

manner.

FEMA first began implementing the NMFS-recommended RPA when it sent notice

letters to participating communities pursuant to RPA Element 1 on June 13, 2016. AR 0001837.

Since then, as explained in detail in our opening memorandum, ECF No. 21-1, FEMA has been

developing a draft Integration Plan and undergoing a NEPA process, which the agency believes

will fully address the other NMFS-recommended RPA elements ahead of the September 1, 2027,

deadline for full implementation. On July 15, 2024, FEMA publicly announced PICMs including

outreach, education, and direct technical assistance to NFIP-participating communities in Oregon

to ensure they demonstrate compliance with the ESA. *See* AR 0018608; AR 0018760 (letter to

communities). The PICMs individually and collectively satisfy the intent of the corresponding

provisions of RPA Element 2. *See* AR 0018827 (side-by-side comparison of RPA Element 2 and PICMs). The PICMs will also assist communities in preparing for implementation of the final ESA Integration Plan by helping them develop short- and long-term solutions to ensure no ESA violation. AR 0018760.

RPA Element 2A recommends "that all development in the [special flood hazard area ("SFHA")] be mitigated to achieve no net loss of natural floodplain functions." AR 0000289. As defined in FEMA's Model Floodplain Management Ordinance for Participating Communities in the Implementation Plan Area ("Model Ordinance"), available at

https://www.fema.gov/sites/default/files/documents/fema_r10_oregon-nfip-esa-model-ordinance_082024.pdf (last visited Nov. 19, 2024), "no net loss" is a standard under which "adverse impacts must be avoided or offset through adherence to certain requirements so that there is no net change in the function from the existing condition when a development application is submitted to the state, tribal, or local jurisdiction." Model Ordinance at p. 3-6 – 3.7. The floodplain functions of floodplain storage, water quality, and vegetation must be maintained. *Id.*

Consistent with RPA Element 2A, the PICMs avoid jeopardy by ensuring that project proponents avoid or mitigate for any losses to habitat functions when development occurs in the SFHA. To this end, the PICMs require NFIP-participating communities in Oregon to select one of the three PICM pathways, which include the following:

> • adopting a model ordinance that considers impacts to species and their habitat and requires mitigation to a no net loss standard;
>
> • choosing to require a habitat assessment and mitigation plan for development on a permit-by-permit basis; or
>
> • putting in place a prohibition on floodplain development in the SFHA.

AR 0018760. Communities must elect one of the PICM pathways by December 1, 2024. *Id.*

Communities are further required to begin collecting the data for their floodplain development

activities in accordance with the PICMs to send to FEMA beginning in January of 2025. *Id.* If a

community fails to inform FEMA of its selection, they will default to the permit-by-permit

PICM pathway. *Id.* A report of all floodplain development activities will be required each

January beginning in 2026. *Id.* Failure to report may result in a compliance visit in accordance

with 44 C.F.R. § 59.24(b)-(c). *Id.*

FEMA has developed two important tools for communities to use in achieving no net loss

of floodplain functions via the PICMs: the Model Ordinance and the Habitat Assessment Guide.

The Model Ordinance provides a set of provisions to protect the built environment from flood

damage and to minimize potential impacts of construction and reconstruction on public health

and safety, property, water quality, and aquatic and riparian habitats. *See* Model Ordinance at p.

1-1. The Habitat Assessment Guide is designed to assist qualified habitat professionals,

representing both permit applicants and permit officials, in ensuring that any adverse impacts

from actions occurring anywhere within the Oregon SFHA will be fully mitigated to a no net loss

standard when a community has elected the permit-by-permit assessment pathway. *See* final

Habitat Assessment Guide at p. 8 (available at

https://www.fema.gov/sites/default/files/documents/fema_r10_oregon-habitat-assessment-

guide_082024.pdf (last visited Nov. 19, 2024)). As part of this permit-by-permit assessment

process, the Habitat Assessment Guide provides that project proponents must assess the current

habitat baseline of the project site (e.g., degraded parking lot or a pristine old growth forest).

Habitat Assessment Guide at 6. The project proponent must then assess the effects of the project

on habitat functions and, finally, determine the appropriate mitigation necessary to fully mitigate any adverse effects consistent with the no net loss standard. *Id.*

The Model Ordinance and Habitat Assessment Guide both achieve no net loss of floodplain functions by ensuring that project proponents mitigate for losses to habitat functions when development occurs in the SFHA. Project proponents must use a mitigation hierarchy under which they first attempt to avoid any adverse effects, then minimize those adverse effects, and finally compensate for the adverse effects. *See* Model Ordinance at p. 3-29 and Habitat Assessment Guide at p. 32. "This mitigation sequence hierarchy requires minimization of those impacts that can't be avoided and directs that any impacts remaining after taking steps to minimize shall be fully mitigated." Habitat Assessment Guide at p. 32.

To mitigate for lost flood storage, vegetation removal, and creation of impervious surfaces resulting from development in the floodplain, the Model Ordinance and Habitat Assessment Guide both employ the mitigation ratios recommended by NMFS as interim measures in RPA Element 2. *Compare* AR 0000289 and Model Ordinance, *supra,* at pp. 46-47 (Table 1) and Habitat Assessment Guide, *supra,* Section 2.5.3. *See also* AR 0018827 (side-by-side comparison of RPA Element 2 and PICMs). By using mitigation ratios rather than a straight 1:1 ratio, FEMA accounts for any temporal losses that may occur during the time that it takes for the mitigation to mature or to guard against failure. AR 0000313. For instance, when replacing trees as mitigation for loss of vegetation, it takes time for trees to grow, and the mortality rate of transplanted trees can be rather high for a myriad of reasons. *See* AR 0000168 ("For example, the removal of a 30-year old cottonwood tree and planting a 5-year old sapling constitutes a 25-year delay in the development of habitat functions provided by a mature tree (*e.g.,* shade, [large

woody debris]).”). By ensuring that project proponents avoid or mitigate for any losses to habitat

functions when development occurs in the SFHA, the PICMs fully address RPA Element 2A.

The PICMs also fully address RPA Element 2B. RPA Element 2B recommends that

FEMA impose specific limitations on the types of development in a 170-foot riparian buffer zone

(“RBZ”) and requires specific types of mitigation for development in the RBZ. AR 0000289.

The Model Ordinance and Habitat Assessment Guide both incorporate the NMFS-recommended

RBZ definition set forth in RPA Element 2B. *Id.*; *see* Model Ordinance, *supra*, at Section 6.4 &

final Habitat Assessment Guide, *supra*, Section 2.2.3. As explained above, the Model Ordinance

and Habitat Assessment Guide also employ the mitigation ratios for lost flood storage, vegetation

removal, and creation of impervious surfaces resulting from development in the RBZ in

accordance with the NMFS-recommended interim measures in RPA Element 2. *See* AR

0000289*; see also* AR 0018827 (side-by-side comparison of RPA Element 2 and PICMs).

Consistent with RPA Element 2B, the PICM requirement for NFIP-participating communities in

Oregon to select one of the three PICM pathways described above allows local communities to

choose from three alternatives to effectuate the RBZ-related recommendations of RPA Element

2B and ensure that their permitting actions do not result in ESA violations. AR 0018760.

RPA Element 2C recommended that FEMA cease processing certain Letters of Map

Revision Based on Fill that fail to demonstrate to FEMA that all impacts to development to

natural floodplain functions were avoided or mitigated. AR 0000290. RPA Element 2D

recommended that FEMA review all requests for Conditional Letters of Map Revision

(“CLOMR”) and Conditional Letters of Map Revision Based on Fill (“CLOMR-F”) to determine

whether the proposed projects will adversely affect floodplain functions and, if so, prescribe

mitigation measures for those projects. *Id*. Consistent with RPA Elements 2C and 2D, the PICMs

include a suspension of CLOMR processing and procedures to ensure no net loss of floodplain functions. *See* AR 0018608, AR 0018760*; see also* AR 0018827 (side-by-side comparison of RPA Element 2 and PICMs). FEMA's suspension plainly meets the no net loss purpose and requirements of RPA Element 2 given that no CLOMRs and CLOMR-Fs will be processed or approved that would impact natural floodplain functions.

RPA Element 2E recommended FEMA track permitted development and mitigation activities associated with this development. AR 0000290. FEMA is providing a reporting tool for communities to collect data on floodplain development activities. Graves Decl. ¶¶ 156, 209; AR 0018705 & 0018711. "Communities will be required to report their floodplain development activities to FEMA beginning in January of 2025." AR 0018760. This action satisfies RPA Element 2E. *See* AR 0018827 (side-by-side comparison of RPA Element 2 and PICMs).

RPA Element 2F calls for FEMA to recommend to the State that when multiple repeat-damage buyout opportunities exist, the State prioritize development buyouts based on presence of high-quality salmonid populations. AR 0000290; Graves Decl. ¶¶ 158-159; AR 0018706. FEMA has provided its recommendation that the State of Oregon prioritize development buyouts based on presence of high-quality salmonid populations to the Oregon Department of Emergency Management in a letter dated May 31, 2024. AR 0018665. This action fully satisfies the recommendations contained in RPA Element 2F. AR 0000290; Graves Decl. ¶¶ 158-159; AR 0018706.

Plaintiffs respond to FEMA's arguments with speculation that among the three pathways provided for communities to ensure that their permitting actions do not result in ESA violations, communities will be most likely to elect the permit-by-permit alternative. *See* ECF No. 29 at 14 ("[T]he most likely outcome is that most participating communities will operate under the

permit-by-permit approach."). Plaintiffs appear to acknowledge that the BiOp on its face does not preclude FEMA from incorporating permit-by-permit assessment among compliance options provided to the communities. *See id.* at 15. Indeed, FEMA interprets RPA Element 2A to require permit-by-permit assessment and has explained the basis of its reasonable conclusion here that the PICMs will achieve the no net loss goal of RPA Element 2. AR 0018703; Graves Decl. ¶ 145. Again, the Habitat Assessment Guide provided to communities pursuant to the PICMs incorporates the mitigation ratios recommended by NMFS in RPA Element 2. Moreover, providing communities with alternatives to ensure that their permitting actions do not result in ESA violations is consistent with the National Flood Insurance Act, which requires FEMA to "develop comprehensive criteria designed to *encourage,* where *necessary,* the adoption of adequate State and local measures . . . ." 42 U.S.C. § 4102(c) (emphasis added). *See also* AR 0018706; Graves Decl. ¶ 157 ("FEMA has no land use authority and no permitting authority but FEMA will work with the participating communities to encourage mitigation activities."). FEMA has taken alternative, reasonably adequate steps consistent with NMFS's recommended RPA Elements 2A-2B to ensure that it does not violate the ESA. *Tribal Vill. of Akutan*, 869 F.2d at 1193.

Plaintiffs do not dispute that the suspension of CLOMR processing pursuant to the PICMs fully satisfies RPA Elements 2C and 2D. *See* ECF No. 29 at 16. Rather, Plaintiffs assert that CLOMR suspension *by itself* is insufficient for FEMA to avoid jeopardy. *See id.* In making this assertion, Plaintiffs ignore the other elements of the PICMs and therefore do not refute FEMA's conclusion that the PICMs *together* will insure the continued existence of any endangered or threatened species. Graves Decl. ¶ 263; AR 0018725.

As with the other provisions of RPA Element 2, the PICMs fully address RPA Elements 2E-F. *See* AR 0018827 (side-by-side comparison of RPA Element 2 and PICMs). Plaintiffs' reply memorandum makes no mention of RPA Elements 2E-F. Accordingly, Plaintiffs fail to rebut Defendants' arguments regarding the sufficiency of the PICMs in relation to RPA Elements 2E-F. *See* ECF No. 21-1 at 44-45.

FEMA has demonstrated that the PICMs together satisfy each of the corresponding requirements of RPA Elements 2A-2F. *See* AR 0018827 (side-by-side comparison of RPA Element 2 and PICMs). FEMA has also explained the basis for its reasonable determination that these measures will satisfy the no net loss goals of RPA Element 2. AR 0018611. FEMA has further explained the basis of its determination that the implementation of the PICMs pending completion of the NEPA process and full implementation of the other elements of FEMA's Integration Plan will ensure against jeopardy. In short, given the substantial program changes at the national level, *see* ECF No. 21-1 at 30-31, FEMA has concluded the implementation of the interim RPA requirements will be sufficient to avoid jeopardy to ESA-listed species and habitat. Graves Decl. ¶ 49; AR 0018680.

This case is fundamentally different from *Northwest Environment Defense Center ("NEDC") v. United States Army Corps of Engineers,* 479 F. Supp. 3d 1003 (D. Or. 2020), cited by Plaintiffs at ECF No. 29 at 10-11. In *NEDC,* the Court concluded that the U.S. Army Corps of Engineers ("Corps") had not identified any "alternative, reasonably adequate steps" it has taken to comply with the ESA. *NEDC*, 479 F.Supp.3d at 1015. Rather, the Corps had implemented only a *subset* of the NMFS-recommended RPAs at issue in that case. *Id.* at 1010 ("Although the nature and extent of the delays are matters of dispute between the parties, it is undisputed that significant RPA measures were never carried out, some were delayed, some have not yet

occurred, and some will not occur in time to meet future deadlines."). Here, by contrast, FEMA has adopted the PICMs as alternative, reasonably adequate steps to insure the continued existence of any endangered or threatened species, subject to completion of the NEPA process and implementation of FEMA's Integration Plan. Graves Decl. ¶ 263; AR 0018725.

In sum, FEMA has taken alternative, reasonably adequate steps consistent with NMFS's RPA Element 2 to insure that it does not violate the ESA. Consistent with the reasoning and holding in *Tribal Village of Akutan,* 869 F.2d at 1193, the Court should grant summary judgment in favor of FEMA with respect to all of Plaintiffs' remaining claims pursuant to their First Claim for Relief that FEMA is violating the ESA as a result of its alleged failure to implement the NMFS-recommended RPA.

## III.    FEMA's Draft Integration Plan Is Not A Final, Reviewable Agency Action.

As described in detail above, FEMA has already taken measures consistent with RPA Elements 1 and 2. FEMA has also explained its actions *to date* to implement the remaining RPA Elements 3-6. *See generally* Graves Decl.; AR 0018670. In short, FEMA has developed a draft Integration Plan pertaining to RPA Elements 3-6, subject to completion of the ongoing NEPA process. For example, consistent with RPA Element 4, the current draft Integration Plan offers Oregon NFIP-participating communities a menu of actions ("four paths") to ensure no net loss of floodplain functions:

> • Adopt a Model Ordinance that contains the require[d] elements in Table 2 of the Oregon Plan for NFIP ESA Integration.
>
> • Complete and submit to FEMA an ordinance checklist to demonstrate that new and/or existing local policies address the required elements in Table 2 of the Oregon Plan for NFIP ESA Integration.
>
> • Complete and implement an approved community compliance plan, developed by the local community and approved by FEMA (FEMA may request technical

input from NMFS) as meeting the "no net loss" goal at the community level prior
to implementation.

• Complete and implement a community-level habitat conservation plan, as
outlined in Section 10 of the ESA (or 4(d) if applicable).

AR 0018710; Graves Decl. ¶ 205:

In our opening memorandum, we referred to the draft Integration Plan to the extent that it

informs the PICMs that FEMA is presently undertaking and refutes Plaintiffs' assertions that

FEMA has unreasonably delayed implementing RPA Elements 3-6. ECF No. 21-1 at 46-54.

FEMA anticipates that it will implement the Integration Plan in satisfaction of RPA Elements 3-

6, subject to completion of the ongoing NEPA process, by September 2027. Graves Decl. ¶ 263;

AR 0018725 ("FEMA intends to continue to work towards implementation of alternative,

reasonably adequate steps to insure the continued existence of any endangered or threatened

species, subject to completion of the NEPA process, by September 2027.").

In the meantime, pending completion of the NEPA process and full implementation of

the Integration Plan, FEMA's current Draft Integration Plan is not itself a final agency action

subject to APA review. *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 483 (2004)

("[T]o be final, agency action must mark the consummation of the agency's decisionmaking

process, and must either determine rights or obligations or occasion legal consequences.")

(cleaned up). Plaintiffs' arguments concerning the sufficiency of Elements 3-6 of FEMA's *draft*

Integration Plan do not support their arguments concerning their First Claim for Relief or in any

way undermine Defendants arguments, *supra*, that FEMA is presently avoiding jeopardy and

adverse modification by implementing the PICMs in satisfaction of RPA Element 2.

**IV.    FEMA Has Not Unreasonably Delayed Compliance with its ESA Section 7 Obligations (Second Claim for Relief).**

Federal Defendants moved for summary judgment on Plaintiffs' Second Claim for Relief and demonstrated that any delay in implementing the individual elements of the NMFS-recommended RPA (ahead of the September 1, 2027 deadline for full implementation, which has not lapsed) is reasonable based on the factors set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"), *cited in In Re Natural Resources Defense Council, Inc.,* 956 F.3d 1134, 1138-39 (9th Cir. 2020). ECF No. 21-1 at 54-57. In short, FEMA has already taken measures consistent with RPA Elements 1 and 2. FEMA has also explained its actions *to date* to implement the remaining RPA Elements 3-6. *See generally* Graves Decl.; AR 0018670. Therefore, contrary to the allegations in Plaintiffs' Second Claim for Relief, ECF No. 1 at ¶ 112, FEMA's alleged failure to implement the NMFS-recommended RPA, or other reasonably adequate protective measures, does not constitute an agency action "unlawfully withheld or unreasonably delayed" pursuant to the APA, 5 U.S.C. § 706(1).

Plaintiffs did not respond to any of Defendants' arguments regarding the Second Claim for Relief, except to state that "Plaintiffs seek summary judgment only on their First Claim for Relief." ECF No. 29 at 6 n.1. Plaintiffs' Second Claim for Relief should be deemed conceded. *Rintoul v. Old Dominion Freight Line, Inc.*, Case No. 3:21-cv-1733-JR, 2024 WL 2974469, *2 (D. Or. June 13, 2024) (citing *Ramirez v. Ghilotti Bros.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) and *Angeles v. U.S. Airways, Inc.*, No. C 12-05860 CRB, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013)). The Court should grant summary judgment in favor of Federal Defendants with respect to Plaintiffs' Second Claim for Relief.

**CONCLUSION**

In accordance with *Tribal Village of Akutan,* 869 F.2d at 1193, FEMA is taking alternative, reasonably adequate steps consistent with NMFS's recommended RPA to ensure that it does not violate the ESA pending completion of the NEPA process and full implementation of its Integration Plan. FEMA has also demonstrated, in accordance with the *TRAC* factors described in *Natural Resources Defense Council,* 956 F.3d at 1138-39, that any delay in implementing the Integration Plan has been reasonable. FEMA continues to work to achieve full implementation of the Integration Plan by NFIP-participating communities in Oregon by September 1, 2027, in accordance with the deadline established by Congress in the DRRA. The Court should grant summary judgment in favor of FEMA as to all claims in Plaintiffs' Complaint and deny Plaintiffs' cross-motion for summary judgment.

Dated:  November 19, 2024

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
S. JAY GOVINDAN, Chief
NICOLE M. SMITH, Assistant Chief

*/s/ Mark Arthur Brown*
MARK ARTHUR BROWN, Senior Trial Attorney
D.C. Bar No. 470050
Wildlife and Marine Resources Section
4 Constitution Square
150 M Street, N.E.
Washington, D.C. 20002
Tel: 202-305-0204
mark.brown@usdoj.gov

Counsel for Defendants

17

## CERTIFICATE OF SERVICE

I hereby certify that, on November 19, 2024, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

_/s/ Mark Arthur Brown_
MARK ARTHUR BROWN