CHELSEA STEWART-FUSEK (OSB # 224994)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6425
Email: cstewartfusek@biologicaldiversity.org

MARY STITES (OSB # 225005)
Northwest Environmental Defense Center
10101 S. Terwilliger Blvd.
Portland, OR 97219
Phone: (503) 768-6726
Email: mary@nedc.org

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST ENVIRONMENTAL DEFENSE CENTER**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**FEDERAL EMERGENCY MANAGEMENT AGENCY**, *et al.*,<br><br>Defendants. | Case No. 3:23-cv-01335-SI<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND ORDER AND JUDGMENT** |

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiffs moved to alter or amend this

Court's Order and Judgment to correct an error of law in the Court's ruling dismissing Plaintiffs'

First Claim for Relief because this Court erred in construing Plaintiffs' Endangered Species Act

("ESA") claim against the Federal Emergency Management Agency ("FEMA") as one brought

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
TO ALTER OR AMEND ORDER AND JUDGMENT                                    1

under Section 706(1) of the Administrative Procedure Act ("APA"). The arguments FEMA raises in its response in opposition are meritless, and the response itself untimely, having been filed three days after the deadline imposed by Local Rule 7-1(e).[1] Because the ongoing violation Plaintiffs allege is ripe for review now, and because this Court held otherwise due to a manifest error of law, the Court should amend its Judgment and Order to correct its error, find that Plaintiffs' claim is ripe for adjudication, and reinstate the pending summary judgment briefing.

## ARGUMENT

I.    **This Court Made a Manifest Error of Law by Applying an APA Section 706(1) Analysis to Plaintiffs' ESA Citizen Suit Claim**

Plaintiffs' ESA citizen suit claim alleges that FEMA is *presently* violating the ESA because FEMA continues to operate the National Flood Insurance Program ("NFIP") in the very manner that the National Marine Fisheries Service ("NMFS") found to cause jeopardy to ESA-listed species or destruction and adverse modification of their critical habitat. *See* ECF No. 1 at ¶¶ 102–104. As Plaintiffs have detailed throughout the briefing in this case, *see e.g.,* ECF No. 19 at 28–43, ECF No. 29 at 6–22, ECF No. 48 at 5–12, FEMA has not only failed to meet the deadlines for changing its NFIP operations that NMFS laid out in its Biological Opinion ("BiOp") and Reasonable and Prudent Alternative ("RPA"), but it has *also* continued to implement the program absent "alternative, reasonably adequate steps to [e]nsure the continued existence of [the] endangered or threatened species." *Tribal Village of Akutan v. Hodel,* 869 F.2d 1185, 1193 (9th Cir.1988).

---

[1] Plaintiffs filed their motion to alter or amend this Court's Order and Judgment to correct an error of law on April 27, 2026. Local Rule 7(e) required any response to be filed 14 days later on May 11, 2026. FEMA did not file a response in opposition to Plaintiffs' motion until May 14, 2026. FEMA neither made a request for an extension from this Court, nor did it acknowledge its untimeliness.

In dismissing Plaintiffs' claim, the Court undertook a ripeness analysis made pursuant to Section 706(1) of the APA, rather than the ESA's citizen suit provision under which Plaintiffs brought their claim. ECF No. 52 at 8 (hereinafter "Order"). In doing so, the Court asked whether the RPA constitutes a discrete agency action that FEMA was required to take, making this inquiry because, it said, "Plaintiffs bring their lawsuit under Section 706(1) of the APA." Order at 8–9 (citations omitted). The Court subsequently held that Plaintiffs' claim is not ripe because FEMA could take alternative actions to the RPA, thus implementing the RPA is not an unlawfully withheld agency action reviewable pursuant to APA Section 706(1).[2] Order at 8–9. Additionally, the Court found Plaintiffs' claim to be unripe because the Draft Environmental Impact Statement ("DEIS") is not yet a reviewable final agency action. Order at 9–11.

But Plaintiffs' ESA claim does not rest on whether FEMA has failed to take a "discrete agency action that [FEMA] is required to take," Order at 8, nor does it depend on hypothetical, future changes to FEMA's draft plans. *Id*. at 11.[3] Instead, the question before the Court is whether FEMA is currently violating Section 7(a)(2) of the ESA by operating the NFIP absent the implementation of the RPA measures by their deadlines *or* the timely implementation of

---

[2] Despite insisting that it "could hardly be more explicit or clear" that the Court knew Plaintiffs' claim was brought under the ESA's citizen suit provision, ECF No. 56 at 2, FEMA provides no explanation for the Court's numerous and explicit references to Plaintiffs' claim as being one brought "under" Section 706(1) of the APA. *See* Order at 8 ("Plaintiffs bring their lawsuit *under Section 706(1) of the APA* … which provides that a court shall compel agency action unlawfully withheld or unreasonably delayed" (emphasis added); *see also id*. ("A claim *under § 706(1)* can reach only 'discrete agency action' that an agency is 'required to take.'") (emphasis added); *id*. at 10 ("Viewed in this context, *Plaintiffs' claim under § 706(1)* is really a lawsuit 'about the sufficiency of an agency action 'dressed up as an agency's failure to act.'") (emphasis added).
[3] In addition to the DEIS's finality being irrelevant to whether FEMA is currently violating the ESA, the DEIS is relevant to the Section 7(a)(2) claim only in that it demonstrates that FEMA is not only years behind schedule in its implementation of timely, ESA-mandated reforms to the NFIP, but those years have only resulted in a plan that squarely conflicts with the expert recommendations in the BiOp, for which FEMA provides no adequate rationale.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
TO ALTER OR AMEND ORDER AND JUDGMENT                                        3

reasonably adequate alternative measures. To answer this question, the Court must "measure FEMA's [ESA] compliance against the language of BiOp." *Nat'l Wildlife Fed'n v. Fed. Emergency Mgmt. Agency*, C11-2044-RSM, 2014 WL 5449859, at *9 (W.D. Wash. Oct. 24, 2014) pursuant to APA Section 706(2)'s arbitrary and capricious standard of review. *Tribal Village of Akutan,* 869 F.2d at 1193 (9th Cir.1988); *see also Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs* ("*NEDC*"), 479 F. Supp. 3d 1003, 1018 (D. Or. 2020) (finding the Corps' failure "to *timely* implement several RPA measures" or to take by the RPA's deadlines "any alternative, reasonably adequate steps to address the issues the RPA measures were intended to improve[,]" a violation of Section 7(a)(2)). That is what Plaintiffs are asking the Court to do in this case—"to measure FEMA's [ESA] compliance against the language of the BiOp," *Nat'l Wildlife Fed'n*, 2014 WL 5449859 at *9, in order to determine whether FEMA is *currently* ensuring against jeopardy despite not having made any significant changes to its NFIP operations since NMFS found that those operations were jeopardizing the species. Ten years later, all but one of the RPA's mandatory deadlines have passed, and despite not taking alternative actions by those deadlines, FEMA *continues to implement the NFIP*. Accordingly, FEMA's ESA compliance is ripe for review now.

FEMA seems to argue that an agency's delay in implementing an RPA by its explicit, mandatory interim deadlines somehow cannot support an allegation that the agency is acting in violation of the ESA, ECF No. 56 at 3, but as Plaintiffs have explained throughout their briefing, NMFS could not have been clearer that FEMA needed to make timely changes to its NFIP operations to ensure against jeopardy. *See e.g.,* ECF No. 29 at 6–23. This is made even more clear by the RPA's accompanying Incidental Take Statement ("ITS"), which expressly depends on NMFS's assumption that FEMA would meet the RPA's call to make a series of timely, phased

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
TO ALTER OR AMEND ORDER AND JUDGMENT                                          4

changes *prior* to September 2024 to progressively reduce the NFIP's harm to species over an "8.5 year implementation period." AR325; *see also,* AR284–85, AR287–88, AR342. For example, the ITS states that "[d]uring the 8.5 year RPA implementation period, take is likely to occur as floodplain development continues, although *the measures in RPA Element 2 ... will reduce the amount of take*" and "*[a]s FEMA and communities commence mapping and regulatory changes*, the amount of take is expected to decline." AR325 (emphasis added). NMFS found that prior to the final RPA deadline—by which time FEMA must demonstrate to NMFS that the other RPAs have already been implemented and are working effectively, AR305–07—the "amount of take will decline further *with increasing levels of implementation of the RPA* at Federal, state, and local levels reaching the lowest level of residual take by September 2024." AR325 (emphasis added). In no world could NMFS expect take to reach its "lowest level … by September 2024"—or September 2027 as modified by Congress—if NMFS expected that FEMA would only be issuing its *plan* for implementation by that date. "Basically, Defendants are 'attempting to say that the [RPA] deadlines are not essential when it has already been established [in the Biological Opinion] that they are.'" *NEDC,* 479 F. Supp. 3d at 1017 (quoting *Sw. Ctr. for Biological Diversity v. Babbitt*, No. CIV. 97-0474 PHX-DAE, 2000 WL 33907602, at *10–11 (D. Ariz. Sept. 26, 2000)). And regardless, whether FEMA has violated the ESA by failing to change its NFIP operations in accordance with the RPA's timeline is a merits question that is ripe for this Court's review. [4]

---

[4] The Court's Order questioned in a footnote whether the deadlines contained in the RPA were mandatory due to the "except otherwise provided for[]" language. Order at 10, note 10. But the RPA framework makes clear that the "otherwise provided for" language requires the bulleted deadlines set forth on AR287 to be modified by certain subparts of the more detailed RPA obligations set forth in AR288–307. As just one example, sub-element RPA 2.C includes requirements that FEMA was to meet much sooner than RPA 2's March 15, 2018 deadline. AR290. And while RPA 5 was subject to the March 15, 2018 deadline contained in the bulleted

Finally, FEMA's argument—which it never made in its summary judgment briefing—that "Plaintiffs themselves failed to allege any present ESA violation by FEMA to support their ESA citizen-suit claim," ECF No. 56 at 4, must also be disregarded. Plaintiffs' briefing in this case extensively detailed why, when considered against the language of the RPA and the ongoing, unmitigated habitat destruction caused by the NFIP, the inconsequential and highly belated actions FEMA has allegedly taken are insufficient to ensure against jeopardy. *See*, *e.g.*, ECF No. 19 at 29–30 ("FEMA fails to carry the agency's burden of demonstrating that these alternative actions are reasonably adequate to ensure against jeopardy and adverse modification"); *id*. at 30–43, *id*. at 22–25 (pointing to NMFS's findings in its 5-year species status reviews that the NFIP continues to harm species because FEMA has not made timely changes to the program as the RPA required); *see also* ECF No. 1 at ¶¶ 103–104 (Plaintiffs alleging in their Complaint that "FEMA has not implemented a vast majority of the RPA and most of the deadlines have passed," ECF No. 1 at ¶ 102, and FEMA's "failure…to take other protective actions" by those deadlines means that "FEMA has failed to ensure that FEMA's implementation of the NFIP in Oregon 'is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat [16 U.S.C. § 1536(a)(2)].'").

As FEMA stated in its own summary judgment briefing, "the issue before the Court … is whether FEMA's implementation of the NFIP in Oregon is *presently* likely to jeopardize species or result in the destruction or adverse modification of critical habitat." ECF No. 21-1 at 28–29 (emphasis added). To address this issue, the Court must ask *not* whether implementing the RPA

---

list, sub-element RPA 5.A *also* required FEMA to ensure that floodplain development "reporting by NFIP communities may commence by July 1, 2018." AR304. In other words, the "except otherwise provided for" language does not limit the applicability of the mandatory interim deadlines themselves but rather refers to the *additional* mandatory deadlines contained in the detailed RPA sub-elements "listed below" the bulleted list at AR287.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
TO ALTER OR AMEND ORDER AND JUDGMENT

6

as written is a discrete agency action that FEMA was required to take, but rather whether FEMA has taken alternative actions by the deadlines in the RPA that are sufficient to ensure against jeopardy to the species. Because FEMA continues to implement the NFIP, that question is ripe for review now.

## II.    Plaintiffs' ESA Claim is Ripe

The manifest error of law committed in the Court's *Ohio Forestry* ripeness analysis is that it failed to ask whether delaying review in this case "imposes a significant *practical harm* upon the plaintiff." *Nat. Res. Def. Council v. Abraham*, 388 F.3d 701, 706 (9th Cir. 2004) (citing *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998)). Plaintiffs have routinely alleged significant practical harms borne by the NFIP's routine destruction of ESA-listed species' floodplain habitat that harm "the interests that [Plaintiffs] advance" should judicial review be delayed further.[5] *Ohio Forestry*, 523 U.S. at 733. For example, as explained in Plaintiffs' supplemental ripeness briefing, ECF No. 48 at 6–8, the 2024 NMFS status review for Upper Willamette River steelhead and Chinook states that FEMA's status quo approach to implementing the NFIP in Oregon continues "to jeopardize [the] listed anadromous fish species

---

[5] FEMA's argument that there is no practical harm to Plaintiffs' interests because Plaintiffs "fail to allege any present ESA violation," ECF No. 56 at 4, is, as explained previously, not based in reality. In effect, FEMA attempts to shift the agency's heavy burden of demonstrating that its actions are sufficient to ensure against jeopardy onto Plaintiffs. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997) (noting that if an agency departs from a biological opinion it "must not only articulate its reasons for disagreement (which ordinarily requires species and habitat investigations that are not within the action agency's expertise)," but it also "runs a substantial risk if its (inexpert) reasons turn out to be wrong"). Despite this heavy burden, and despite insisting in its summary judgment briefing that "FEMA is presently avoiding jeopardy and adverse modification by implementing the [Pre-Implementation Compliance Measures] in satisfaction of RPA Element 2," ECF No. 21-1 at 22–23, FEMA has repeatedly failed to provide to this Court *any* evidence of these measures' sufficiency, much less that these measures are being implemented and enforced across the NFIP area.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
TO ALTER OR AMEND ORDER AND JUDGMENT                                                    7

… and the Southern Resident killer whale"[6] and lists "slowed implementation of the NFIP"

changes as an ongoing threat to the species.[7]

Because the interests that Plaintiffs advance will continue to suffer significant practical

harm if judicial review is delayed, judicial intervention is likely to spur FEMA's compliance with

ESA Section 7(a)(2), and because no further factual development is needed for this Court to

"measure FEMA's [ESA] compliance against the language of the BiOp," *Nat'l Wildlife Fed'n*,

2014 WL 5449859 at *9, to determine whether FEMA is *currently* taking "alternative, reasonably

adequate steps to insure the continued existence of any endangered or threatened species," *Tribal

Vill. of Akutan*, 869 F.2d at 1193, this case is ripe for review now.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Memorandum in Support of its Motion,

this Court made a manifest error of law by applying an APA Section 706(1) analysis to Plaintiffs'

ESA citizen suit claim alleging that FEMA is currently violating ESA Section 7(a)(2) by failing

to ensure against jeopardy to Oregon's critically imperiled salmonids and the Southern Resident

orca, and ensure against the destruction or adverse modification of fish species' critical habitat.

Plaintiffs request that this Court correct this error, reverse its dismissal of Plaintiffs' First Claim

for Relief, and proceed to a ruling on the merits of Plaintiffs' claim.

Dated: May 27, 2026                    Respectfully submitted,

                                       */s/ Chelsea Stewart-Fusek*
                                       CHELSEA STEWART-FUSEK (OSB # 224994)
                                       Center for Biological Diversity
                                       P.O. Box 11374

---

[6] NMFS West Coast Region, *5-Year Review: Upper Willamette Steelhead, Upper Willamette Chinook* at 42–43 (2024).
[7] *Id*. at 45.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
TO ALTER OR AMEND ORDER AND JUDGMENT                                          8

Portland, OR 97211
Phone: (971) 717-6425
Email: cstewartfusek@biologicaldiversity.org

MARY STITES (OSB # 225005)
Northwest Environmental Defense Center
10101 S. Terwilliger Blvd.
Portland, OR 97219
Phone: (503) 768-6726
Email: mary@nedc.org


*Attorneys for Plaintiffs*